# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

MARTIN LANZ ZASLANSKY and )
ROBERTA ZASLANSKY FAMILY )
TRUST, )
          )
         Petitioners, )
          )
      v. )      C.A. No. 2021-0168-KSJM
          )
FZ HOLDINGS US, INC., )
          )
         Respondent. )

## ORDER RESOLVING RESPONDENT'S MOTION TO DISMISS AND PETITIONERS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

1.      The petitioners, Martin Lanz Zaslansky and a trust named for his wife, the Roberta Zaslansky Family Trust (the "Trust" and, collectively, "Petitioners"), are current noteholders of FZ Holdings US, Inc. ("Respondent" or the "Company"), a Delaware corporation.[1]

2.      In 2018, Hemang Mehta and Nevil Shah (the "Principals") formed the Company to produce and sell video game figurines. Around that time, Mitesh Lakhani, the managing partner of Raisol Capital LLC ("Raisol"), approached Zaslansky about investing in the Company. The petition alleges that Lakhani "has a historical relationship with the Principals," but the nature of that relationship is unclear.[2]

---

[1] Unless otherwise stated, the facts are drawn from Petitioners' Verified Petition for Breach of Contract & for the Appointment of a Receiver to a Delaware Corporporation Pursuant to 8 *Del. C.* § 291, C.A. No. 2021-0168-KSJM, Docket ("Dkt.") 21 (the "Amended Petition" or "Am. Pet.").

[2] *Id.* ¶ 53.

3.     On July 31, 2018, the Trust and the Company executed a convertible promissory note ("Note 1") for $250,000 in principal with 8% interest per annum.[3]  Under Note 1, the Company was obligated to pay the outstanding principal amount and any unpaid interest on July 31, 2020, unless the Company defaulted earlier.

4.     On March 1, 2019, Zaslansky and the Company executed a convertible promissory note ("Note 2" and, together with Note 1, the "Notes") for an additional $25,000 in principal with 8% interest per annum.[4]  Under Note 2, the Company was obligated to pay the outstanding principal amount and any unpaid interest on March 1, 2020, unless the Company defaulted earlier.

5.     Each Note provides that the "Company agrees to pay on demand all of the losses, costs, and expenses (including, without limitation, attorneys' fees and disbursements) which the Holder incurs in connection with enforcement of this Note, or the protection or preservation of the Holder's rights under this Note, whether by judicial proceeding or otherwise."[5]

6.     The Company has struggled financially.  According to its balance sheet as of March 31, 2021, its assets were worth $469,302.63, its liabilities totaled $2,313,866.59, and its net income was negative $49,871.60.[6]

---

[3] *See* Am. Pet. Ex. A (Note 1).

[4] *See* Am. Pet. Ex. B (Note 2).

[5] Note 1 § 15; Note 2 § 15.

[6] *See* Am. Pet. Ex. E ("March 31, 2021 Balance Sheet").

7.    On October 29, 2020, each Petitioner served a notice of default on the Company for failing to repay the outstanding principal and interest due under the Notes by their maturity dates.[7]

8.    Despite this failure to timely repay its noteholders, the Company has partially repaid debt owed to its Principals.  In support of this allegation, Petitioners point to the Company's balance sheet as of September 30, 2019, which reflects a debt to "Founder/Affiliates" of $316,237.37.[8]  The Company's later balance sheet indicates that a debt due to "Owner" decreased from $207,384.48 as of December 31, 2020, to $194,761.94 as of March 31, 2021.[9]  Similarly, a debt owed to "Sunrise," which the Principals are alleged to own or control, appeared to decrease during the same time period.[10]

9.    In a similar vein, the Principals are alleged to have commingled personal debt with Company debt.  The Company's balance sheets indicate that it repaid a debt to Raisol in the amount of $90,000 between September 30, 2019, and December 31, 2020.[11] According to Petitioners, however, the Company was never indebted to Raisol, as these

---

[7] *See* Am. Pet. Ex. C (Trust Notice), Ex. D (Zaslansky Notice).

[8] *See* Am. Pet. Ex. J ("September 30, 2019 Balance Sheet").

[9] *See* March 31, 2021 Balance Sheet.

[10] *See* Am. Pet. Ex. L (December 31, 2019 Balance Sheet) (reflecting $237,222.42 due to Sunrise), Ex. M (June 30, 2020 Balance Sheet) (reflecting $216,931.42 due to Sunrise), March 31, 2021 Balance Sheet (reflecting $207,337.42 due to Sunrise).  According to Petitioners, the Principals own or control SCP PTF Investment Vehicle LLC, which does business as Sunrise Capital Partners.  Petitioners allege that the entity referred to as "Sunrise" on the balance sheets is this entity.

[11] *See* September 30, 2019 Balance Sheet, March 31, 2021 Balance Sheet.  The balance sheets for periods after September 30, 2019, refer to debt owed to "Raisol Consulting," which Petitioners allege is the same entity as Raisol.

3

balance sheet entries refer to a loan from Raisol to Sunrise Capital Partners that the Principals had guaranteed.[12]

10. As a further cause for concern, Petitioners allege that the Principals are running a parallel company with a similar business model called Minted Labs, Inc. This company also produces video game figurines, but they are less expensive than the Company's and are not custom-made. The Principals did not disclose the existence of Minted Labs to Petitioners, who learned about it from Lakhani in early 2020. When pressed for information, the Principals admitted that they and a Company employee have worked for both companies, which allegedly operate out of the same office building.

11. Petitioners filed this action on February 25, 2021, and they amended their petition on August 20, 2021. In Counts I and II of the Amended Petition, each Petitioner claims that Respondent breached their respective Note and seeks damages and an accounting from 2018 to the present. In Count III, Petitioners request the appointment of a receiver under 8 *Del. C.* § 291.

12. On September 3, 2021, Respondent moved to dismiss Counts I and II under Court of Chancery Rule 12(b)(1) for lack of subject matter jurisdiction and Count III under Rule 12(b)(6) for failure to state a claim.[13] Petitioners cross-moved for partial summary

---

[12] *See* Am. Pet. Ex. K (Promissory Note & Guaranty). The guaranty was for a $50,000 loan, so it is not clear how that might have morphed into a $90,000 debt on the Company's balance sheet. The inconsistency is not shocking, however, as none of the Company's financials appear to have been prepared in accordance with Generally Accepted Accounting Principles.

[13] *See* Dkt. 22.

4

judgment on Counts I and II on October 15, 2021.[14] The motions were fully briefed as of December 7, 2021,[15] and the court held oral argument on December 21, 2021.[16]

13. Respondent took an unusual position in briefing. Respondent conceded that the court has subject matter jurisdiction over Count III but argued that Count III fails to state a claim. Respondent further argued that Counts I and II are purely legal claims that fall outside of this court's limited jurisdiction. In Respondent's view, the court should dismiss Counts I and II without prejudice and transfer them to the Superior Court because of the defects in Count III.[17] That is a common enough argument. The atypical part is that, if this court denies Respondent's motion to dismiss Count III and decides to assert jurisdiction over Counts I and II, Respondent does not contest entry of judgment in Petitioners' favor on the first two counts.[18] Because Respondent's motion and the fate of Counts I and II hinge on its arguments as to Count III, this analysis focuses there.

14. Respondent has moved to dismiss Count III for appointment of a receiver under 8 *Del. C.* § 291 under Court of Chancery Rule 12(b)(6). Under Rule 12(b)(6), "the

---

[14] *See* Dkt. 26.

[15] *See* Dkt. 25 (Resp't's Opening MTD Br.); Dkt. 27 (Pet'rs' Combined Answering MTD Br. & Opening PMSJ Br.); Dkt. 34 (Resp't's Combined Reply MTD Br. & Answering PMSJ Br.); Dkt. 38 (Pet'rs' Reply PMSJ Br.).

[16] *See* Dkt. 43 ("Oral Arg. Tr.").

[17] *See* Resp't's Opening MTD Br. at 12–13.

[18] *See* Resp't's Combined Reply MTD Br. & Answering PMSJ Br. at 3 (stating that Respondent does "not contest the entry of judgment on Counts I and II"); Oral Arg. Tr. at 5:18–21 (stating that "to the extent the Court does determine that it should exercise jurisdiction over the debt claims, [Respondent does] not contest entry of judgment on those claims").

governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[19]  The court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[20]  The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[21]

15.     Under 8 *Del. C.* § 291, a creditor or stockholder can petition this court to appoint a receiver "of and for" an insolvent corporation.[22]  The power to appoint "a receiver lies within the sole discretion of the Court."[23]  In reviewing the petition, "[t]he Court applies an 'insolvency plus' standard to determine whether to appoint a receiver under Section 291."[24]  That standard requires the court to determine two things: (i) that the corporation is insolvent and (ii) that appointment of a "neutral third party" is necessary "to

---

[19] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[20] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[21] *Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

[22] 8 *Del. C.* § 291.

[23] *Banet v. Fonds de Régulation et de Contrôle Café Cacao*, 2009 WL 529207, at *3 (Del. Ch. Feb. 18, 2009) (citation omitted).

[24] *In re Geneius Biotech., Inc.*, 2017 WL 6209593, at *5 (Del. Ch. Dec. 8, 2017) (quoting *Ross Hldg. & Mgmt. Co. v. Advance Realty Gp., LLC*, 2010 WL 3448227, at *5 (Del. Ch. Sept. 2, 2010)).

protect the insolvent corporation's creditors or shareholders by showing some benefit that such an appointment would produce or some harm it could avoid."[25]

16. To plead insolvency, Petitioners must allege that Respondent has either: "1) 'a deficiency of assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof,' or 2) 'an inability to meet maturing obligations as they fall due in the ordinary course of business.'"[26]

17. Petitioners allege, and the Company's balance sheet demonstrates, that the Company's liabilities equaled nearly five times its assets as of March 31, 2021, and the Company had a negative net income. This court has held that similar facts demonstrate insolvency under the balance sheet test.[27] Petitioners have thus met the first test for insolvency. Because Petitioners have clearly met their pleading burden under the first test, this analysis does not reach their arguments under the second test.

18. The "plus" factor of the insolvency-plus test requires that Petitioners plead facts to show "there exist 'special circumstances' where 'some real beneficial purpose will be served'" by the appointment of a receiver.[28] To satisfy this standard, Petitioners must plead "the necessity of a neutral third party [i] 'to protect the insolvent corporation's

---

[25] *Id.* (cleaned up).

[26] *Prod. Res. Gp., L.L.C. v. NCT Gp. Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004) (quoting *Siple v. S & K Plumbing & Heating, Inc.*, 1982 WL 8789, at *2 (Del. Ch. Apr. 13, 1982)).

[27] *See id.* at 783 (holding that insolvency was adequately pled under the balance sheet test where the respondent's liabilities were nearly five times its assets and it consistently suffered large operating losses).

[28] *Pope Invs. LLC v. Benda Pharm., Inc.*, 2010 WL 5233015, at *6 (Del. Ch. Dec. 15, 2010) (quoting *Banet*, 2009 WL 529207, at *3).

creditors or shareholders by showing some benefit that such an appointment would produce or some harm it could avoid,' and [ii] the 'potential benefits must outweigh any potential harm that appointment of a receiver could cause.'"[29]

19. Petitioners allege that the Principals "have caused the Company to repay other creditors in part or full ahead of Petitioners and other noteholders, and have commingled their own debt with debt of the Company."[30] The creditors being repaid ahead of Petitioners are alleged to be the Principals and their affiliates.[31] As for commingling, Petitioners allege that Respondent has recorded the "personal debt of the Principals and of Sunrise Capital Partners . . . as Company debt."[32] On top of this, Petitioners allege that Respondent has continued to "secure[] more convertible debt."[33]

20. Petitioners also allege that the Principals have used Respondent's money and resources to operate a parallel company, Minted Labs, which Petitioners allege operates in the Company's building and uses a Company employee.[34] Petitioners have no interest in Minted Labs and allege they and other noteholders were not informed about its existence until early 2020.[35]

---

[29] *Geneius*, 2017 WL 6209593, at *5 (quoting *Badii ex rel. Badii v. Metro. Hospice, Inc.*, 2012 WL 764961, at *7, *10 (Del. Ch. Mar. 12, 2012) (internal quotation marks and footnotes omitted)).

[30] Am. Pet. ¶ 46.

[31] *See id.* ¶ 49.

[32] *Id.* ¶ 52.

[33] *Id.* ¶ 32.

[34] *See id.* ¶¶ 56–57.

[35] *See id.* ¶ 58.

21. In response to Petitioners' plus-factor allegations, Respondent first argues that Petitioners' claims are not well-pled, pointing out that the Amended Petition uses the phrase "upon information and belief" more than twenty times. Respondent cites several cases in which this court found such allegations insufficient to state a claim.[36]

22. While the phrase "upon information and belief" appears with some frequency in the Amended Petition, this decision need not rely on those allegations alone. Petitioners have provided support for their allegations with specific facts and attached exhibits from which the court is able to draw reasonable inferences.[37] Indeed, Respondent's own financial records attached to and incorporated by reference into the Amended Petition render the allegations about growing convertible debt, paying off insiders, and satisfying insiders' personal obligations reasonably conceivable.[38] In addition, the Amended Petition alleges that "[w]hen pressed for information [about Minted Labs], the Principals conceded that they and an employee of the Company have worked for both companies."[39] This situation is thus distinguishable from Respondent's cited cases.[40]

---

[36] *See* Resp't's Opening MTD Br. at 8–10; Oral Arg. Tr. at 7:4–8:10.

[37] *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (holding that the trial court erred by considering documents "neither attached to, nor incorporated by reference into, the complaint").

[38] *Compare* September 30, 2019 Balance Sheet (showing $850,000 in convertible debt, $316,237.37 due to "Founder/Affiliates," and $90,000 due to "Raisol Capital"), *with* March 31, 2021 Balance Sheet (showing $1,100,000 in convertible debt, $194,761.94 due to "Owner," and $0 due to "Raisol").

[39] Am. Pet. ¶ 58.

[40] *See DG BF, LLC v. Ray*, 2021 WL 776742, at *27 (Del. Ch. Mar. 1, 2021) (dismissing claims based on information and belief that the nominal defendant was undercapitalized and being used as the individual defendants' personal piggy bank because the allegations

23.     Aside from its "information and belief" argument, Respondent contends that the only inference to be drawn from Respondent's failure to repay its debts allegations is that "Petitioners desire (exigently) to be moved 'ahead' in the line of partial or full debt payments that *are* actually being made by FZ Holdings."[41]  Respondent further contends that "unspecified 'concerns'" about a parallel company "do[] not support a reasonable inference of any exigent circumstance warranting a receiver."[42]  Finally, Respondent insists that appointing a receiver for the Company would have the effect of liquidating a corporation that is only valuable as a going concern, which would destroy its value and prevent any meaningful distribution to creditors.[43]

24.     Respondent's arguments again fall short.  Taking Petitioners' allegations as true and drawing all reasonable inferences in their favor, as the court must at this stage,

were "limited" and "conclusory"); *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *23 (Del. Ch. Feb. 27, 2020) (refusing to accept as true an allegation made upon information and belief where the allegation was unsupported by well-pled facts in the complaint); *O'Gara v. Coleman*, 2020 WL 752070, at *6 (Del. Ch. Feb. 14, 2020) (same); *Griffin Corp. Servs., LLC v. Jacobs*, 2005 WL 2000775, at *6 (Del. Ch. Aug. 11, 2005) (same).

[41] Resp't's Opening MTD Br. at 9 (emphasis in original).

[42] *Id.*

[43] *See* Resp't's Combined Reply MTD Br. & Answering PMSJ Br. at 2; Oral Arg. Tr. at 4:4–12, 6:4–11.  Respondent cites to *Keystone Fuel Oil, Inc. v. Del-Way Petroleum, Co.*, for the proposition that "a receiver is normally a remedy of an auxiliary nature incidental to primary relief bottomed upon fraud or inequitable conduct under the given circumstances, and the appointment of a receiver should not be the sole object of a suit." 1977 WL 2572, at *2 (Del. Ch. June 16, 1977).  That portion of the decision, which was on a different procedural posture, "cited to two cases in which a petitioner sought the appointment of a receiver pendente lite for a solvent company and invoked this court's general equitable authority, not the statutory authority granted by § 291," and thus is inapposite.  *Prod. Res.*, 863 A.2d at 785.

Respondent's continued debt financing, selective repayment of current debts, lackadaisical approach to bookkeeping, and commingling of personal and Company debts has the potential to harm Petitioners, other current noteholders, and any future creditors that the Company may attract. A receiver could prevent or alleviate this harm. And a receiver need not necessarily liquidate the insolvent corporation's assets to do so. Rather, a receiver is broadly empowered to do all that "may be necessary or proper" in the name of the corporation.[44] If Petitioners prove their claims, it remains to be seen what powers will be necessary and proper for the receiver to do what is in the best interests of the Company. At this stage, the question is whether it is reasonably conceivable that the appointment of a neutral third party is necessary to protect the Company's creditors. It is. Petitioners have thus adequately pled the plus factor.

25. For the foregoing reasons, Respondent's motion to dismiss Count III pursuant to Rule 12(b)(6) is DENIED.

26. Respondent has moved to dismiss Counts I and II under Rule 12(b)(1), arguing that they are legal claims falling outside of this court's limited jurisdiction.[45] Under the "clean-up doctrine," however, this court may exercise "ancillary jurisdiction 'to resolve purely legal causes of action that are before it as part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid piecemeal

---

[44] 8 *Del. C.* § 291.

[45] *See* Resp't's Opening MTD Br. at 10–13.

11

litigation.'"[46]  The court has found that Count III under 8 *Del. C.* § 291 is well-pled; that claim indisputably gives rise to subject matter jurisdiction over this action, allowing the court to exercise subject matter jurisdiction over Counts I and II under the clean-up doctrine.  Accordingly, Respondent's motion to dismiss Counts I and II pursuant to Rule 12(b)(1) is DENIED.

27.  The court has denied Respondent's motion to dismiss Count III for failure to state a claim and held that the exercise of jurisdiction over Counts I and II is appropriate. Per Respondent's stipulation described above, Petitioners' motion for partial summary judgment as to Counts I and II is GRANTED.

28.  The parties shall confer on a form of Order memorializing this ruling as to Counts I and II and on a schedule for litigating Count III.

/s/ Kathaleen St. J. McCormick
Chancellor Kathaleen St. J. McCormick
Dated: February 8, 2022

---

[46] *FirstString Rsch., Inc. v. JSS Med. Rsch. Inc.*, 2021 WL 2182829, at *6 (Del. Ch. May 28, 2021) (quoting *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016)).